**Louis SCHNEIDER, Plaintiff–Appellant,**

v.

**COUNTY OF SAN DIEGO, and Reybro, Inc., a California corporation, dba, Quality Auto Recycling, Defendants–Appellees.**

No. 00–55709.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 12, 2001.

Filed March 21, 2002.

---

Louise E. Goebel, San Diego, CA, and Kenneth Chesebro, Cambridge, MA, for the plaintiff-appellant.

John J. Sansone and Morris G. Hill, County of San Diego, San Diego, CA, for the defendants-appellees.

Before: WARDLAW, PAEZ and TALLMAN, Circuit Judges.

WARDLAW, Circuit Judge.

Louis Schneider appeals the district court's order awarding prejudgment interest and refusing to award nominal damages. After Schneider successfully sued the County of San Diego and Gregory Reynolds, dba Reybro, Inc. (collectively, the "County") for violation of the Takings and Due Process Clauses of the Fifth Amendment under 42 U.S.C. § 1983, the district court awarded Schneider "prejudgment interest" to compensate him for the delay in payment of just compensation for the takings. It refused to award nominal damages for Schneider's due process claim.

We must decide whether Schneider is entitled to prejudgment interest as part of the constitutionally required "just compensation" for his property or whether, as the County contends, he is merely entitled to damages for delay of payment. Like the district court, we conclude that where, as here, the property owner was not compensated until long after the taking, "just compensation" requires an award of prejudgment interest. However, unlike the district court, we conclude that the amount of prejudgment interest is appropriately calculated in a manner that will ensure that the property owner receives the constitutionally mandated award. We also conclude that because we previously had held that Schneider's procedural due process rights were violated as a matter of law, he is entitled to judgment and nominal damages therefor. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand.

I. Factual and Procedural Background

Schneider filed this Section 1983 action arising from the County's removal of several vehicles from his property over a decade ago. These consolidated appeals[1] represent his third appearance before us in this action. We set forth the relevant facts previously summarized by a panel of our court:

> In 1989, Schneider owned a 1.4 acre lot in a rural, agriculturally zoned part of San Diego County, not far from the City of Oceanside. Schneider did not reside on the property but rented out the house located on the lot. He did, however, park nine buses, two motorhomes, and two automobiles on the lot in an open field approximately 240 feet from

---

1. We address the appeals related to the award of attorneys' fees (Nos. 00–55798 and 00– 56329) in a memorandum disposition filed concurrently.

the house. These vehicles were visible from the public road that runs in front of Schneider's lot.

After receiving a number of complaints about the vehicles, the County instituted an investigation. County officers determined that the vehicles were parked on the lot in violation of county zoning ordinances and that they constituted a public nuisance. The County was not successful in persuading Schneider to abate the nuisance voluntarily and on September 26, 1989, it posted a NOTICE AND ORDER TO ABATE on the property. *Schneider v. County of San Diego, et al.*, 28 F.3d 89, 90–91 (9th Cir.1994). Schneider requested an appeal hearing, which was held. As a result, he was again ordered to remove the vehicles. However,

> Schneider took no action to remove the vehicles from his property, nor did he seek judicial review of the abatement order. On December 21, 1989, the County, through its agent Reybro, abated the nuisance by towing the vehicles from the lot. Subsequently, Reybro dismantled or destroyed the vehicles and sold the remains as scrap.

*Id.* at 91.

On December 13, 1990, Schneider filed this action in the District Court for the Southern District of California, naming the County of San Diego, towing company Reybro, Inc., and ten County officials as defendants. Schneider alleged violations of the Fourth Amendment Search and Seizures Clause, the Fifth Amendment Due Process and Takings Clauses, and various other statutory and common law claims. On July 30, 1992, the district court granted summary judgment in favor of the County on all claims and dismissed from the action the County officials. Schneider appealed, and we reversed the district court's grant of summary judgment as to the due process and takings claims. *Id.*

On remand, the district court conducted a jury trial on Schneider's due process and takings claims against the County. The jury rendered a verdict in favor of the County on both claims. Schneider filed a motion for judgment as a matter of law, which the district court denied. Schneider appealed, and on April 24, 1998, we again reversed. We held in an unpublished disposition that Schneider was entitled to judgment as a matter of law on his procedural due process and takings claims and remanded for a determination of damages.

On remand, Schneider sought compensatory relief under the Just Compensation Clause. Schneider requested entry of judgment of $1 nominal damages against each defendant on his due process claim during pre-trial proceedings. The district court agreed that Schneider was "entitled by law" to nominal damages for his due process claim and that prejudgment interest would be determined by the court after the jury trial on damages for the takings claim. After a one day trial, the jury awarded Schneider a total of $67,795.50 in just compensation for his takings claim. Schneider then filed a Rule 59(e) motion to amend the judgment, requesting $64,931.07 in prejudgment interest for the takings claim and $2 in nominal damages for the due process claim, which the County contested.

The district court ruled that because of the delay in time between the taking and the payment of compensation, Schneider was entitled to additional compensation to ensure that he was justly compensated for the taking. The court rejected the usual practice of applying the postjudgment rate of interest for the amount of prejudgment interest and Schneider's consistent suggestion of use of the 52 week treasury bill rate extant before the taking of his vehicles. It found that because substantial evidence showed that Schneider's property would

not have increased in value during the time period of the delay and the "equities of the case," it was more appropriate to use a variable interest rate, computing each year separately. Using that formulation, the court awarded a total amount of $34,145.54 prejudgment interest to Schneider. The court declined to award nominal damages for the procedural due process violation on the grounds that Schneider had failed to present evidence to the jury as to damages and that an award of nominal damages would be duplicative of the damage award for the takings violation. Schneider appealed.

## II. Prejudgment Interest

The County contends that the district court erred by awarding any prejudgment interest on the takings claim. Schneider argues that the district court correctly awarded prejudgment interest, but erred in calculating the amount due him by adopting variable annual interest rates. We agree that the district court erred, but not in the manner either party suggests. Interest awarded as just compensation for a takings violation is not the equivalent of the prejudgment interest awarded here. The two forms of interest serve similar purposes (to compensate for delay), but have been addressed under entirely separate analytical frameworks. As discussed below, prejudgment interest and post-takings compensation in the form of interest are supported by different theoretical foundations, reviewed under different legal standards, and frequently involve different rates of interest.

### A. Prejudgment Interest as Compensation for a Taking

■ Prejudgment interest is a measure that "serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." *West Virginia v. United States*, 479 U.S. 305, 311 n. 2, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987). Whether prejudgment interest is permitted in a particular case is a matter of statutory interpretation, federal common law, and, in some instances, state law. *See Monessen Southwestern Ry. Co. v. Morgan*, 486 U.S. 330, 337–38, 108 S.Ct. 1837, 100 L.Ed.2d 349 (1988) (examining congressional intent, federal common law, and state law in recognition of prejudgment interest). "We review a district court's decision to assess prejudgment interest rates for abuse of discretion." *Saavedra v. Korean Air Lines Co., Ltd.*, 93 F.3d 547, 555(9th Cir. 1996) (citing *Vance v. Am. Hawaii Cruises, Inc.*, 789 F.2d 790 (9th Cir.1986)).

■ An award of prejudgment interest as compensation for a taking, however, takes on a constitutional dimension. The Fifth Amendment entitles an individual whose property is taken by the government to "just compensation." *First English Evangelical Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 315, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). "Under[the just compensation] standard, the owner is entitled to receive 'what a willing buyer would pay in cash to a willing seller' at the time of the taking." *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 10, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984) (internal quotations and citations omitted). When payment of fair market value is deferred for a period following the taking, "something more than fair market value is required to make the property owner whole, to afford him 'just compensation.'" *Albrecht v. United States*, 329 U.S. 599, 602, 67 S.Ct. 606, 91 L.Ed. 532 (1947); *see also Jacobs v. United States*, 290 U.S. 13, 17, 54 S.Ct. 26, 78 L.Ed. 142 (1933)

(" '[The property owner] is entitled to such addition as will produce the full equivalent of that value paid contemporaneously with the taking.' " (citation omitted)); *Phelps v. United States*, 274 U.S. 341, 344, 47 S.Ct. 611, 71 L.Ed. 1083 (1927) (same); *Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299, 306, 43 S.Ct. 354, 67 L.Ed. 664 (1923) (same). As the district court correctly pointed out, "[t]his additional element of compensation has been measured in terms of reasonable interest." *Albrecht*, 329 U.S. at 602, 67 S.Ct. 606; *see also Seaboard Air*, 261 U.S. at 306, 43 S.Ct. 354("Interest at a proper rate is a good measure by which to ascertain the amount so to be added."). The determination of a reasonable rate of interest for just compensation is a finding of fact, which should be disturbed only if clearly erroneous. *United States v. 50.50 Acres of Land*, 931 F.2d 1349, 1354 (9th Cir.1991).

The Supreme Court has recognized a "procedure for modifying a condemnation award where there is substantial delay between the date of valuation and the date the judgment is paid, during which time the value of the land changes materially." *Kirby Forest*, 467 U.S. at 17–18, 104 S.Ct. 2187. *Kirby Forest* involved a "straight condemnation"[2] proceeding, in which the Supreme Court granted *certiorari* to determine when a taking "should be deemed to occur and the constitutional obligation of the United States to pay interest on the adjudicated value of the property." *Kirby Forest*, 467 U.S. at 9, 104 S.Ct. 2187. There, the Court found the valuation of the property by the government to have taken place three years before the actual date of the taking and the payment of compensation therefor. The government pragmatically sought to treat the date of trial as the date of the taking. The Court rejected that approach because it provided the landowner with "substantially less than the fair market value of his property on the date the United States tenders payment," in violation of the Fifth Amendment Just Compensation Clause. *Id.* at 17, 104 S.Ct. 2187. The Court reasoned that the landowner "is constitutionally entitled to the value of its land on the date of the taking, not on the date of the valuation." *Id.* at 19, 104 S.Ct. 2187. To remedy the problem where "there is a substantial delay between the date of valuation and the date the judgment is paid, during which time the value of the land changes materially," the Court concluded that an award of interest was not constitutionally required, but that the appropriate procedure was to remand to the district court to take evidence related to the change in the market value in the property from the date of valuation to the date of the taking, which, in those circumstances, coincided with the tender of payment. *Id.* at 18–19, 104 S.Ct. 2187.

2. As the Supreme Court explained in *Kirby Forest*:

The United States customarily employs one of three methods when it appropriates private land for a public purpose. The most frequently used is the so-called "straight-condemnation" procedure prescribed in 40 U.S.C. § 257.

*Kirby Forest*, 467 U.S. at 4, 104 S.Ct. 2187. In accordance with this procedure, the government files a complaint in condemnation that identifies the property and the interest that the United States wishes to take. Thereafter, a trial ensues to determine the question of how much compensation is due to the owner of the land.

The practical effect of final judgment on the issue of just compensation is to give the Government an option to buy the property at the adjudicated price. If the Government wishes to exercise that option, it tenders payment to the private owner, whereupon title and right to possession vests in the United States. .If the Government decides not to exercise its option, it can move for dismissal of the condemnation action. *Id.* (citations omitted).

■ The County asserts that *Kirby Forest* and *Albrecht* stand for the proposition that the government is not constitutionally obligated to pay prejudgment interest in a takings case. This misconstrues both *Kirby Forest* and *Albrecht*. The *Kirby Forest* Court described the constitutional meaning of just compensation, which is "in most cases the fair market value of the property on the date it is appropriated." *Kirby Forest*, 467 U.S. at 10, 104 S.Ct. 2187. The Court elaborated that under this standard, the owner is entitled to receive what a willing buyer would pay in cash to a willing seller at the time of the taking. *Id.* Addressing the question of interest, the Court could not have been more clear:

> If the Government pays the owner before or at the time the property is taken, no interest is due on the award.... But if disbursement of the award is delayed, the owner is entitled to interest thereon sufficient to ensure that he is placed in as good a position pecuniarily as he would have occupied if the payment had coincided with the appropriation.

*Kirby Forest*, 467 U.S. at 10, 104 S.Ct. 2187.

Nor does *Albrecht* stand for the proposition that interest is never constitutionally required to provide just compensation. As the Supreme Court stated in *Albrecht*:

> [W]here payment of that fair market value is deferred, it has been held that something more than fair market value is required to make the property owner whole, to afford him "just compensation." This additional element of compensation has been measured in terms of reasonable interest. Thus "just compensation" in the constitutional sense, has been held, absent a settlement between the parties, to be fair market value at the time of taking plus "inter-est" from that date to the date of the payment.

392 U.S. at 602, 88 S.Ct. 2243.

■ We therefore conclude that the district court correctly determined that Schneider is entitled to prejudgment interest to ensure that he was put in as good a pecuniary position as he would have occupied had the County paid him for his vehicles when it took them. However, in determining the proper rate of the interest to be awarded, the court erred.

**B. Calculation of the Appropriate Rate of Prejudgment Interest**

In assessing the prejudgment interest rate in this case, the district court followed the analysis set forth in *Western Pacific Fisheries, Inc. v. SS PRESIDENT GRANT*, 730 F.2d 1280, 1288 (9th Cir. 1984). Although *Western Pacific Fisheries* was a maritime case, its analysis of the measure of prejudgment interest has been applied by numerous district courts in Section 1983 and other actions. *See, e.g., Motorola, Inc. v. Fed. Express*, No. C 99 03659 WHA, 2000 WL 1677963, at *1, 2000 U.S. Dist. LEXIS 16366, at *4 (N.D.Cal. November 3, 2000) (following *Western Pacific* to award prejudgment interest for a Warsaw Convention cargo case); *Murphy v. City of Elko*, 976 F.Supp. 1359, 1362 (D.Nev.1997) (following *Western Pacific* to award prejudgment interest for a Section 1983 due process claim); *SEC v. Cross Fin. Servs.*, 908 F.Supp. 718, 734 (C.D.Cal. 1995) (following *Western Pacific* to award prejudgment interest in a SEC action); *Golden State Transit Corp. v. City of Los Angeles*, 773 F.Supp. 204, 210 (C.D.Cal. 1991) (following *Western Pacific* in awarding prejudgment interest for a Section 1983 labor claim). We have yet to explicitly adopt the standard set forth in *Western Pacific* for Section 1983 cases. However, even assuming that the *Western Pacific*

standard is generally applicable to Section 1983 actions, we conclude that the measure of prejudgment interest in Section 1983 actions arising out of an unconstitutional taking is controlled by an entirely distinct line of cases.

■ The "just compensation" remedy for an unconstitutional taking is required by the Constitution. Accordingly, we look to the underlying constitutional provision at issue, and cases interpreting it, to define the appropriate measure of prejudgment interest in Section 1983 cases based on an unconstitutional taking. We conclude that the district court must examine what "a reasonably prudent person investing funds so as to produce a reasonable return while maintaining safety of principal," *50.50 Acres of Land,* 931 F.2d at 1354, would receive in determining the amount of prejudgment interest due in Section 1983 actions predicated on an unconstitutional taking.[3]

We have previously examined the question of how prejudgment interest should be calculated in takings cases in the context of the Declaration of Taking Act, 40 U.S.C. § 258a, by which the United States may exercise its eminent domain power. *See 50.50 Acres of Land,* 931 F.2d at 1355–56 (holding that the Declaration of Takings Act's interest provision cannot limit the rate of interest used in computing just compensation in eminent domain proceed-

ings); *United States v. Blankinship,* 543 F.2d 1272, 1275–76 (9th Cir.1976) (same). The Act allows the federal government to exercise quickly its power of eminent domain by depositing with the court the estimated value of property it plans to acquire. 40 U.S.C. § 258a. At the moment of placing the deposit with the court, the government acquires the property and thus the date of the taking is deemed to be the date of the deposit. The Act requires that if the district court should ultimately value the property at an amount higher than that deposited, the government must pay interest on the deficit from the time of the taking to the time of payment. The Act prohibits interest awards on any amount deposited with the court at the time of the taking, permitting only interest on any deficiency determined after judgment. The Supreme Court has described the Act's dual purposes:

> First, to give the government immediate possession of the property and to relieve it of the burden of interest accruing on the sum deposited from the date of taking to the date of judgment.... Secondly, to give the former owner, if his title is clear, immediate cash compensation to the extent of the government's estimate of the value of the property.

*United States v. Miller,* 317 U.S. 369, 381, 63 S.Ct. 276, 87 L.Ed. 336 (1943).

---

**3.** The dissent asserts that we have "reached out to decide" the proper calculation of prejudgment interest in Section 1983 claims seeking just compensation. However, as we have held on numerous occasions, we address pure questions of law, despite being raised for the first time on appeal. *See, e.g., United States v. Echavarria–Escobar,* 270 F.3d 1265, 1267–68 (9th Cir.2001) ("the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court"); *United States v. Robertson,* 52 F.3d 789, 791 (9th Cir.1994) (same). Here, Appellant

Schneider raised the issue as to whether the district court erred in its determination of the rate of prejudgment interest in his opening brief.

The dissent also argues that we have drawn "a dubious distinction" that was not presented by the parties between Section 1983 claims seeking just compensation and Section 1983 tort claims. However, once a party properly raises an issue, we are not obliged to adopt the erroneous legal conclusions it advocates. Instead, we must look to the governing legal authority, in this case, the United States Constitution.

■ "[A]n interest award becomes a necessary part of a just compensation award when the government's initial deposit falls short of the eventual award." *Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299, 306, 43 S.Ct. 354, 67 L.Ed. 664 (1923). In *Blankinship*, we considered whether the 6 percent interest rate then specified by the Act for the deficiency contravened the Fifth Amendment requirement of just compensation. We held that notwithstanding the Act's express limitation, the 6% limitation could only: "operate as a floor. No lesser rate than 6% is consistent with the intent of Congress; a rate no greater than 6% in some instances will contravene the Fifth Amendment." *Blankinship*, 543 F.2d at 1275.

In *50.50 Acres of Land*, we elaborated upon the rule in *Blankinship*, explaining:

> Under *Blankinship*, the court must first determine if the statutory formula is constitutionally inadequate given the factual circumstances of the case. The court should receive evidence from each side and consider a variety of investment measures. If the court finds the statutory formula to be inadequate, it must then determine the appropriate rate to be used.

931 F.2d at 1355.

■ To determine the appropriate rate of interest when payment of just compensation is delayed, the district court must examine what "a reasonably prudent person investing funds so as to produce a reasonable return while maintaining safety of principal" would receive. *50.50 Acres of Land*, 931 F.2d at 1354. The district court should apply an interest rate based on evidence of the rate that would be generated by investment in a diverse group of securities, including treasury bills. *See United States v. 429.59 Acres of Land*, 612 F.2d 459, 465(9th Cir.1980) (approving an award of interest based on "wide range of

government and private obligations with both short term and long term maturities"). In adopting this standard and rejecting Congress's attempts to set a limitation on interest, the Supreme Court has emphasized that under our takings jurisprudence "just compensation" is a "judicial, not a legislative function." *Monongahela. Navigation Co. v. United States*, 148 U.S. 312, 327, 13 S.Ct. 622, 37 L.Ed. 463 (1893).

We have not previously held that this method of calculation of prejudgment interest should be employed in a Section 1983 action predicated upon an unconstitutional taking. Failure to employ the reasonably prudent investor measure of prejudgment interest, however, as in cases exploring the question in the context of the Declaration of Takings Act, could result in a constitutionally inadequate compensation award. Moreover, we fail to see how the tort law nature of Section 1983 alters this conclusion. The Supreme Court has recognized that, unlike most constitutional provisions, the Fifth Amendment provides both the cause of action and the remedy for an unconstitutional taking, "frequently stat[ing] the view that, in the event of a taking, the compensation remedy is required by the Constitution." *First English*, 482 U.S. at 315–16, 107 S.Ct. 2378. The Court has also strongly suggested that the tort law nature of Section 1983 does not change the constitutional nature of this remedy:

> The argument that an uncompensated taking is not tortious because the landowner seeks just compensation rather than additional damages for the deprivation of a remedy, reveals the same misunderstanding. Simply put, there is no constitutional or tortious injury until the landowner is denied just compensation, that the damages to which the landowner is entitled for this injury are mea-

sured by the just compensation he was denied is neither surprising nor significant.

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 718, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999).

 We conclude, therefore, that because the just compensation remedy for a taking is constitutional in nature and thus a matter of judicial—not legislative—function, the statutory vehicle for providing that remedy is not determinative of the remedy itself. The amount of prejudgment interest should be calculated in a manner that ensures that the property owner receives constitutionally adequate compensation. We therefore remand this case to the district court for the determination of a proper and reasonable interest rate in accordance with the "reasonably prudent investor" standard set forth in *50.50 Acres of Land* and *Blankinship.*[4]

### III. Nominal Damages

 The district court erred in failing to award Schneider nominal damages on his procedural due process claim. As a result of Schneider's second round of appeals, we held that he was entitled to judgment as a matter of law on this claim. Therefore, on remand, the district court should have entered judgment and awarded nominal damages. "[N]ominal damages must be awarded if a plaintiff proves a violation of his [or her] constitutional rights." *Estate of Macias v. Ihde,* 219 F.3d 1018, 1028 (9th Cir.2000) (citations omitted); *see also George v. Long Beach,* 973 F.2d 706, 708 (9th Cir.1992) (plaintiff entitled to nominal damages as a matter of law); *Floyd v. Laws,* 929 F.2d 1390, 1401 (9th Cir.1991) (same). Schneider is entitled to such damages, as a matter of law,

"as a symbolic vindication of his constitutional right." *Floyd,* 929 F.2d at 1403. The district court, however, denied Schneider's Rule 59(e) motion to amend the judgment to provide for $2 in nominal damages citing two grounds: waiver and duplication of remedy. We review the denial of the Rule 59(e) motion for an abuse of discretion. *See Zimmerman v. City of Oakland,* 255 F.3d 734, 737 (9th Cir.2001).

Upon his return to the district court, Schneider made his claim for $1 nominal damages from each defendant clear to all. In the Supplemental Pretrial Conference Order, the district judge agreed:

> Because Schneider's takings remedy is superior to his procedural due process remedy, he has elected to limit himself to the takings count in proving up actual damages, beyond the nominal damages to which he is entitled by law under the procedural due process claim.

The district court's later finding of waiver was based on Schneider's failure to request a jury instruction on nominal damages for the due process violation and a failure of proof as to that claim. However, Schneider had already prevailed on his due process claim, and was entitled to judgment and nominal damages as a matter of law.

It is axiomatic that if a plaintiff is entitled to an award as a matter of law, he need not submit evidence of that entitlement to the trier of fact. As we explained in *Floyd:*

> [N]either the judge nor the jury has any discretion in this matter, assuming that the jury has reasonably rendered its verdict for the plaintiff. If the jury finds a constitutional violation, an award of nominal damages is mandatory, not

---

4. The determination of the proper rate of just compensation interest is a factual question to be determined by the trier of fact. *Blankin-*

*ship,* 543 F.2d at 1273; *United States v. 100 Acres of Land,* 468 F.2d 1261, 1269 (9th Cir. 1976).

permissive. That a jury might choose to award zero actual damages is irrelevant to the legal question of whether, on the basis of the jury's verdict, the plaintiff was entitled to judgment and nominal damages. Because Floyd secured a favorable jury verdict on her section 1983 claim ..., she was legally entitled to judgment with a mandatory nominal damages award of $1.00 as a symbolic vindication of her constitutional right. 929 F.2d at 1402–03(abuse of discretion to withhold nominal damage award notwithstanding invited error).

 Nor is an award of nominal damages for Schneider's due process claim duplicative of the just compensation award for his takings claim. Compensatory damages and nominal damages serve distinct purposes. Nominal damages are a purely "symbolic vindication of [a] constitutional right," and are awarded regardless of whether "the constitutional violation causes any actual damage." *George*, 973 F.2d at 708. Compensatory damages, by contrast, serve to return the plaintiff to the position he or she would have occupied had the harm not occurred. *See* Dan B. Dobbs, Remedies § 1.1 (2d ed.1993); *see also Carey v. Piphus*, 435 U.S. 247, 255, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (stating that damages under Section 1983 should ordinarily be "determined according to the compensation principle"). Indeed, nominal damages are normally awarded when a plaintiff is unable to demonstrate an entitlement to compensatory damages. *See Carey*, 435 U.S. at 265, 98 S.Ct. 1042(stating that courts can award nominal damages under Section 1983 for violation of an " 'absolute' right[ ] that[is] not shown to have caused actual injury...."); *Estate of Macias*, 219 F.3d at 1028 (holding that nominal damages must be awarded for violations of constitutional rights even when no actual damages are shown).

We have awarded nominal damages even when a plaintiff has been fully compensated through a different cause of action. In *Larez v. City of Los Angeles*, 946 F.2d 630(9th Cir.1991), and *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514 (9th Cir.1999), we awarded the plaintiffs both nominal and compensatory damages for the same injury. *Larez*, 946 F.2d at 640("[T]o the extent that the Larezes were made whole by the award against the officers, nominal damages were still available in the second phase." (citing *Carey*, 435 U.S. at 266, 98 S.Ct. 1042)); *Ruvalcaba*, 167 F.3d at 524 ("Even though Ruvalcaba has been fully compensated for his injuries, he may still recover nominal damages for a 'separate and distinct [constitutional] wrong' irrespective of whether he is entitled to actual damages for that wrong." (quoting *Larez*, 946 F.2d at 640)).

Because Schneider was entitled as a matter of law to judgment and nominal damages on his procedural due process claim, the district court abused its discretion in denying his Rule 59(e) motion to amend the judgment to include $2 in nominal damages.

## IV. Conclusion

The district court correctly found that under the circumstances of this case, where compensation was paid long after the taking, Schneider is entitled to prejudgment interest. That amount is properly calculated within the framework of our eminent domain cases to ensure that just compensation in a constitutionally adequate amount is awarded to the property owner. Because Schneider prevailed as a matter of law on his procedural due process claim, he need not prove actual damages, but is entitled to judgment and nominal damages. We therefore

AFFIRM in part; REVERSE in part and REMAND for proceedings consistent herewith.

TALLMAN, Circuit Judge, Dissenting from Part II. of the Opinion:

I agree that Schneider is entitled to both nominal damages on his due process claim and prejudgment interest on his § 1983 claim. I dissent only from the Court's ill-advised departure from our applicable precedent. The Court holds, for the first time, that in calculating prejudgment interest in certain § 1983 "takings actions," a district court can no longer rely solely on the easily determined and simply applied 52 week Treasury Bill rate applicable to other tort judgments awarded by federal courts. Because the Court's opinion reaches out to decide this issue by drawing a dubious distinction between § 1983 claims seeking just compensation and other § 1983 tort claims that was neither presented by the parties, nor considered by the district court, I respectfully dissent.

As the Supreme Court has recognized, actions brought under 42 U.S.C. § 1983 sound in tort and are to be evaluated by the courts in light of the principles of tort liability:

> [T]here can be no doubt that claims brought pursuant to § 1983 sound in tort. Just as common-law tort actions provide redress for interference with protected personal or property interests, § 1983 provides relief for invasions of rights protected under federal law. Recognizing the essential character of the statute, '[w]e have repeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability,' and have interpreted the statute in light of the 'background of tort liability.'

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999) (quota-

tions omitted). Our opinion appears to agree that Schneider's § 1983 claim for the County's removal of his nuisance vehicles is governed by principles of tort law.

The opinion correctly recognizes that in calculating prejudgment interest in tort cases governed by federal law, courts in our Circuit generally follow the reasoning of *Western Pacific Fisheries, Inc. v. SS President Grant*, 730 F.2d 1280, 1288 (9th Cir.1984). In fact, the opinion cites several cases in which our district courts have applied the reasoning of *Western Pacific Fisheries* to § 1983 claims. Nowhere does the Court disapprove of the computation of prejudgment interest in those cases under 28 U.S.C. § 1961.

Where I part company with my colleagues, however, is their conclusion that we must now carve out an exception from this accepted practice for § 1983 actions which seek just compensation under the Takings Clause of the Fifth Amendment. In doing so, the Court relies on a line of cases, exemplified by our holdings in *United States v. Blankinship*, 543 F.2d 1272 (9th Cir.1976) and *50.50 Acres of Land*, 931 F.2d 1349 (9th Cir.1991), which require trial courts to consider a variety of marketable investments in calculating prejudgment interest on awards of just compensation. The opinion fails to recognize, however, that these cases involve land condemnation proceedings under a completely separate statute from the Civil Rights Act, the Declaration of Taking Act, 40 U.S.C. § 258a, and were brought by the United States in an effort to acquire land for public use by eminent domain.

In sharp contrast, Schneider chose to bring a tort claim for damages stemming from the County's improper removal from his land and destruction of personal property, junked commercial vehicles, in an effort to abate a public nuisance. Schneider could have styled his claim as one for

recovery of just compensation under the Takings Clause of the Constitution, but instead chose to invoke the benefits of 42 U.S.C. § 1983. Presumably, he did so for purely strategic reasons, such as the ability under § 1983 to recover punitive damages, attorneys fees, and costs if he prevailed. By choosing to style his claim as one sounding in tort, Schneider implicitly agreed to have his action evaluated against the "background of tort liability." The judgment he won should therefore be treated for what it is, as a tort judgment, and prejudgment interest should be calculated in the manner applicable to all other § 1983 actions.

In fact, this is the approach advocated by Schneider himself in this case. Schneider argued on appeal that he should have been awarded prejudgment interest calculated at the rate required by 28 U.S.C. § 1961, the same approach dictated in *Western Pacific Fisheries*. He assigned error to the district court's refusal to do so. Moreover, in his appellate brief, Schneider specifically requested that we not remand this case to the district court, but that we instead remand for entry of an order awarding prejudgment interest at a rate consistent with his interpretation of § 1961. While I disagree with his application of § 1961 to the facts of this case, I believe that he identified correctly the body of law applicable to the calculation of prejudgment interest due on an award of just compensation.[1]

In addition to ignoring the arguments Schneider made to us, the Court also fails to address the reasoning and approach taken by the district court. After recognizing the general applicability of *Western Pacific Fisheries*, the district court relied on *Blanton v. Anzalone*, 813 F.2d 1574, 1575 (9th Cir.1984), for the proposition that the equities of the case require a different result than would be afforded by a perfunctory application of 28 U.S.C. § 1961. The district court then went on to fashion an award by using a variable interest rate, based on the 52 week Treasury Bill, but refused to compound the interest annually.[2] The district court justified this approach by reference to the fact that the County had produced evidence that the seven old buses for which updated values were available would have declined to a fair market value of zero by January 1999. Thus, the district court reasoned that the declining value of the underlying property justified a discount in the amount of prejudgment interest.

While it is unclear how the district court's refusal to compound interest is related to the equities of the case, the district court and Schneider both were correct in recognizing that the judgment in favor of Schneider is based in tort, and thus prejudgment interest should be calculated in the manner prescribed in *Western Pacific Fisheries*. By creating an unprecedented exception to the method of calculating prejudgment interest in federal tort cases, and unnecessarily complicating its calculation with the need for a "mini-trial" on reasonable rates of return to fix interest on the judgment, the Court's opinion unnecessarily confuses what should have

---

1. Schneider requested an award of prejudgment interest at a fixed rate of 7.66%, compounded annually, for the period between the removal and the judgment (12/12/89 1/26/99). This interest rate is based on the 52 week Treasury bill rate closest to the date of the seizure, and would result in an interest award of $64,931.07. The district court recognized,

however, that under 28 U.S.C. § 1961(a), the applicable 52 week Treasury Bill rate is "for the the calendar week preceding the date of judgment." This would yield an interest rate of 4.513%.

2. This approach resulted in a prejudgment interest award of $34,145.54.

been a simple and straight-forward application of 28 U.S.C. § 1961. I would have awarded prejudgment interest according to the analysis set forth in the *Western Pacific Fisheries* line of cases, and ordered the County to pay the $2 in nominal damages, thereby bringing this lengthy litigation to its richly deserved end. For these reasons, I respectfully dissent.